(C. D. 530)

Post Exchange *v.* United States

UNITED STATES CUSTOMS COURT, THIRD DIVISION

(Decided September 15, 1941)

*Lawrence & Tuttle* (*Charles F. Lawrence* of counsel) for the plaintiff.
*Paul P. Rao*, Assistant Attorney General (*Richard F. Weeks*, special attorney), for the defendant.

Before CLINE and KEEFE, Judges

KEEFE, Judge: This action involves the collector's assessment of duty upon Stetson hats originally exported from the United States to a United States Army Post in the Canal Zone and subsequently shipped by said Army Post to a United States Army Post located in Honolulu, Territory of Hawaii. The collector at Honolulu demanded duty upon said hats at the appropriate rates under the provisions of the Tariff Act of 1930. The plaintiff claims that the articles are not the subject of an assessment of duty because they come within the status of articles not exported from the United States and therefore may not be regarded as having been imported.

The sole question before us is whether or not the Canal Zone is a territory or possession of the United States of such status that it is included within the term "United States," as defined in the Tariff Act of 1930, section 401 (k).

The plaintiff contends that the law governing imports from the Canal Zone, enacted by Congress March 2, 1905, 33 Stat. 843, 19 U. S. C. 126, is not applicable to the merchandise herein because subsequent to the enactment thereof Congress has shown a clear intention of incorporating the Canal Zone as part of the possessions of the United States for tariff purposes. Consequently American goods returned from the Canal Zone to a territory of the United States may be considered as included within the status of merchandise

never exported from the United States. Not having been exported they may not be regarded as dutiable imports, under authority of *Associated Commercial Co.* v. *United States*, 24 C. C. P. A. 402, T. D. 48855.

As evidence of the later intent of Congress, the plaintiff contrasts the definitions of the term "United States" in the provisions of section 406 of the Emergency Tariff Act of 1921 with the provisions of section 401 (j), act of 1922, and section 401 (k), act of 1930, stressing that in the prior definition the Canal Zone was excepted specially from the term "United States," whereas the latter definitions fail to make such exception, and that therefore Congress, by implication, expressed the intent to alter the legislative policy and include the Canal Zone within the term.

The Government contends, however, that under the rulings made by the Supreme Court in *Luckenbach Steamship Co.* v. *United States*, 280 U. S. 173; *Kaufman & Sons Co.* v. *Smith*, 216 U. S. 610; and 27 Op. Atty. Gen. 594, the proposition of law is already well settled and the Canal Zone is not to be regarded as a possession of the United States within the meaning of the tariff laws.

In *Associated Commercial Co., Ltd.* v. *United States*, 24 C. C. P. A. 402, T. D. 48855, relied upon by the plaintiff, the merchandise consisted of beer bottles manufactured in the United States and shipped to the Philippine Islands, where they were filled with beer and returned to the United States. The collector took duty thereon and the Court of Customs and Patent Appeals sustained the lower court in holding that the bottles were properly dutiable rather than free of duty. However, the importer argued that merchandise shipped from the Philippine Islands to the United States should not be regarded as "imported." The court in its decision commented upon this argument as follows:

So far as the term "imported" is concerned, we are in entire agreement with appellant, * * *

Upon authority of the foregoing expression of the opinion of the court relative to the term "imported" the plaintiff herein urges that the court has settled the question of the status of articles coming into the United States from its possessions as other than imported merchandise. We are unable to agree with such contention. The question before the court in the *Associated Commercial Co.* case involved the classification of an imported article coming in from the Philippine Islands, under laws specially enacted by Congress. The dictum of the court relative to the application of the word "imported" to such merchandise is confined to the circumstances of that case and may not be considered as applying to merchandise coming into the United States from other United States possessions. It is a maxim not to be disregarded that general expressions, in every opinion, are

to be taken in connection with the case in which those expressions are used. See *Cohens* v. *Virginia*, 6 Wheat. 264, 399, 5 L. ed. 257, 290. If they go beyond the case, they may be respected but ought not to control the judgment in a subsequent suit when the very point is presented for decision. See *Downes* v. *Bidwell*, 182 U. S. 244.

A careful examination of the statutes in connection with the status of the Canal Zone clearly demonstrates that the plaintiff has drawn an erroneous inference in respect to there having been significant change in the status of the Canal Zone subsequent to the act of March 2, 1905, hereafter quoted and commented upon.

Under the treaty between the Republic of Panama and the United States, 33 Stat. at L. 2234, the Republic of Panama granted to the United States in perpetuity the use, occupation and control of a zone of land and land under water for the construction, maintenance, operation, sanitation, and protection of the Panama Canal of the width of 10 miles together with other rights, and permitted the United States to import at any time into the said zone and auxiliary lands, free of customs duties, imposts, taxes, or other charges, articles necessary and convenient in the construction, maintenance, operation, sanitation, and protection of the canal together with all provisions, medicines, clothing, supplies and other things necessary and convenient for the officers, employees, workmen and laborers in the service and employ of the United States. It was provided, however, that if any such articles were disposed of for use outside of the zone and auxiliary lands granted to the United States and within the territory of the Republic of Panama, they shall be subject to the same import or other duties as like articles imported under the laws of the Republic.

Under the act of March 2, 1905, 33 Stat. 843, 19 U. S. C. 126, Congress provided in respect to imports from the Canal Zone, as follows:

> Imports from Canal Zone. All laws affecting imports of articles, goods, wares, and merchandise from foreign countries shall apply to articles, goods, wares, and merchandise and persons coming from the Canal Zone, Isthmus of Panama, and seeking entry into any State or Territory of the United States or the District of Columbia.

Article 126, *supra*, is reprinted in "The Code of the Laws of the United States of America in force January 3, 1935," under title 19, chapter 3, subtitle III, page 806.

In Supplement I thereto, containing perfecting amendments to the "Code" enacted from January 3, 1935, to August 31, 1935, article 126, *supra*, is amended by Congress in language following:

126. Imports from Canal Zone.
"and entry of persons into the United States" should be inserted in line 3 before "from".

The foregoing amendment is also reprinted in "Cumulative Supplement V, page 479," which contains the perfecting amendments to the "Code" enacted up to November 4, 1939, so that article 126, *supra,* as amended, and in force at the time of the entry of the instant merchandise into the Territory of Hawaii, provides as follows:

126. Imports from Canal Zone. All laws affecting imports of articles, goods, wares, and merchandise and entry of persons into the United States from foreign countries shall apply to articles, goods, wares, and merchandise and persons coming from the Canal Zone, Isthmus of Panama, and seeking entry into any State or Territory of the United States or the District of Columbia.

From the foregoing it is clear that the provisions of the act of March 2, 1905, as contained in the Code of Laws of the United States, as amended, were in full force and effect at the time the merchandise herein entered the port of Honolulu, and that such merchandise is to be regarded as having the same dutiable status as imports from foreign countries.

In respect to the further contention of the plaintiff that Congress has by implication repealed the act of March 2, 1905, through expressions as to the definition of the term "United States" we find it is without foundation in fact, nor is there a plain contrariety in them or at least some notice taken of the former acts so as to indicate an intention to repeal it. The definition of the term "United States" in the Emergency Tariff Act, section 406, included "Territories and possessions subject to the jurisdiction of the United States," and then specially excepted from the terms the Philippine Islands, the Virgin Islands, the islands of Guam and Tutuila, and the Canal Zone. In the Tariff Acts of 1922 and 1930, the term "United States" included "territories and possessions of the United States" omitting the words "subject to the jurisdiction of the United States" and in the exceptions to be especially excluded from the term, were the Philippine Islands, the Virgin Islands, American Samoa, and the Island of Guam, the Canal Zone being omitted from the exceptions. Inasmuch as the Canal Zone was a foreign place subject to the jurisdiction of the United States by virtue of the Treaty with the Republic of Panama, the omission of the phrase "subject to the jurisdiction of the United States," appearing as part of the definition of the term "United States" in the Emergency Tariff Act, made it unnecessary for Congress to specially except it from the definition. Consequently, Congress, in omitting the Canal Zone from the list of possessions of the United States not to be included within the definition thereof did nothing more than affirm that such foreign place subject to the jurisdiction of this country was not of the status of a territory or possession requiring special mention. However, it is a settled doctrine of the United States courts that the repeal of statutes by implication is not favored and will not be admitted unless the implication is so clear

as to be equivalent to an express declaration. See *Osborn* v. *Nicholson*, 13 Wall. 654. The implication of repeal urged by the plaintiff is not of such character.

The Supreme Court in various decisions clearly expresses the view that the revenue clauses of the Constitution pertain solely to the States and that territories and possessions are subject solely to the will of Congress. In *Downes* v. *Bidwell*, 182 U. S. 244, the court stated that the Constitution deals with the States, their people, and their representatives, and has made no provision for holding foreign territory, still less for incorporating foreign nations into the Union; that Congress has in its enactments recognized the fact that provisions intended for the States did not embrace the territories, unless specially mentioned, and has specifically legislated for the territories whenever it was its intention to execute laws beyond the limits of the states. The court also stated that as to territories previously subject to the acknowledged jurisdiction of another sovereign the government and laws of the United States do not extend by the mere act of cession and (quoting Chief Justice Marshall in *American Insurance Co.* v. *356 Bales of Cotton*, 1 Pet. 511) that a territory ceded by treaty "becomes a part of the nation to which it is annexed, either on the terms stipulated in the treaty of cession, or on such as its new master shall impose," which the court illustrated by citing the form of government Congress set up in Alaska after its acquisition from Russia, to wit, that there was a much greater analogy to a British Crown colony than to a republic state of America. The court concluded that the island of Porto Rico was a territory appurtenant and belonging to the United States but not a part of the United States within the revenue clauses of the Constitution; that it imposes duties upon imports from such island, and that the plaintiff could not recover back the duties exacted in that case.

In the case of *Kaufman* v. *Smith*, 216 U. S. 610, brought to recover duties exacted upon merchandise imported into the United States from the Canal Zone, the Supreme Court, in dismissing a writ of error from the decision rendered by the circuit court adverse to the plaintiff, concurred in the conclusion reached below in language following:

In view of the treaty between the Republic of Panama and the United States [33 Stat. at L. 2234], and the various acts of Congress relating to such zone, the principles laid down in Downes v. Bidwell, 182 U. S. 244, [45 L. ed. 1088, 21 Sup. Ct. Rep. 770,] were decisive of the questions raised herein.

In view of the foregoing reasons expressed by that court and following the decisions cited, we are constrained to enter judgment in favor of the defendant.